Cumberland Telephone & Telegraph Company *v.* Frances E. Anderson.

[41 South. Rep., 263.]

1. Wrongful Death. *Action by parent for death of infant child. Laws 1898, ch. 65, p. 82. Code 1892, § 663. Lord Campbell's act.*

Laws 1898, ch. 65, p. 82, amendatory of Code 1892, § 663, providing that a party suing for the wrongful death of another shall recover, if entitled to recover at all, such damages as the jury shall assess, taking into consideration all damages of every kind to any and all parties, authorizes a parent suing for the death of an infant child to recover:

(*a*) The value of the services of the child from the time of its death until majority; and

(*b*) Such damages, if any, as the jury may award for the physical and mental suffering endured by the child between the injury and death, however short that time may have been; and

(*c*) Such gratuities, if any, as the evidence may show the parent had a reasonable expectation of receiving from the child before or after its majority; and

(*d*) Such sum as the child might have recovered as the present value of its expectancy.

2. Same. *Evidence. Instruction.*

Where, in an action by a mother for the death of an infant son, there was no proof of the age of the mother or of her life expectancy or of her habits of life, nor proof of any gratuity received by the mother from the son, and the evidence showed that the son earned only ten dollars a month, and that there were only seven years between the date of the injury and the time when but for death he would have reached majority, an instruction that in fixing the amount of pecuniary damages the jury should consider the loss of prospective gratuities from the son to the mother after he became of age was erroneous; for, where gratuities are recoverable, only such as there is a reasonable expectation of receiving are recoverable, and the reasonableness of the expectation of receiving them must be based on evidence that they had been received in the past.

FROM the circuit court of Madison county.

HON. D. M. MILLER, Judge.

Mrs. Anderson, the appellee, was plaintiff, and the telephone company, the appellant, defendant in the court below. From a judgment in favor of plaintiff, defendant appealed to the supreme court.

This was a suit under Laws 1898, ch. 65, by plaintiff, mother of Edward Anderson, an infant, to recover damages because of his death. The case was formerly before the supreme court on appeal by the plaintiff from a judgment predicated of a peremptory instruction in defendant's favor. The former judgment was reversed, and the cause remanded. *Anderson v. Telephone Company,* 86 Miss., 341 (s.c., 38 South. Rep., 736). The facts are fully stated in the report. On a subsequent trial the jury rendered a verdict for plaintiff, awarding her $13,000. From a judgment based on the verdict defendant appealed to the supreme court.

*Harris & Powell,* for appellant.

The eighth instruction granted to the plaintiff is manifestly erroneous, especially in so far as it touches the vital point of the case. It is an instruction on the measure of damages. We direct the court's particular attention to that part of it reading as follows: "And in fixing upon the amount of such pecuniary damages, you will take into consideration the loss to the mother of the services of Edward until he would have arrived at the age of twenty-one years, *and the loss of prospective gratuities from him to his mother after he became twenty-one years of age.*"

That part of the instruction which we have italicized cannot be supported by any of the authorities, although there are some cases to which we will call the court's attention hereinafter which hold, under peculiar statutes and under peculiar states of cases, that the measure of the parent's right in the case of

a death of an infant child is not restricted to the loss of services during minority. Such, however, is not the rule in Mississippi.

In the case of *Railroad Company* v. *Watly,* 69 Miss., 145 (s.c., 13 South. Rep., 82), this court laid down the rule that in an action by the parent for the negligent killing of his infant child the measure of damages is "compensation limited to the actual pecuniary loss sustained on the theory of the parent's right to the services of the child during minority." In the case of *Vicksburg* v. *McLain,* 67 Miss., 4, the same rule seems to have been applied. In Cooley on Torts, 320, note 1, the rule is stated thus: "The present value of the future earnings of the child during minority, less cost of its maintenance and expense of sickness and burial, is the measure of damage."

Sherman and Redfield on Negligence, sec. 763, state the rule thus: "The damages recoverable by a parent for the negligent injury to the person of his child are not strictly confined to those which a master can recover for similar injury to a mere servant. But they are limited to an amount fully compensatory for the loss of services, deducting the expenses of bringing up for a period *not exceeding the minority of the child."* And in section 772, the same authors say: "The pecuniary injury resulting to a parent from the death of a child is usually the excess of the child's probable earnings during its minority over the cost of its support and education. But damages are not necessarily confined to this period. The jury may allow compensation for the loss of such contribution to the support of parents after the child obtains majority as the evidence shows *reasonable* grounds for believing that the child could have made. Affirmative evidence must be given of such contribution in the past as would afford reason to expect it in the future to justify a verdict on this ground, where the child was *of full age* at the time of its death." (The italics are ours.)

In Am. & Eng. Ency. Law, vol. 8, p. 919, we find the rule again laid down as follows: "In an action by a parent to

recover for the wrongful killing of his child a measure of damages is the pecuniary value of the child's services *during his minority,* and the costs and expenses incurred by the parent on account of the injury. The value of such services is to be estimated on a basis of what children in the same condition and station of life and of like capabilities are ordinarily worth, without regard to any peculiar value which such parent might place upon such services. From this must be deducted the usual expense of caring for and rearing the child.

There are cases in which a parent is allowed to recover damages for the death of a child after the child has attained majority; these, however, are found mostly to be cases where the deceased was an adult at the time of its death, and was contributing to the support of the parent. As in the case of *White* v. *Railroad Company,* 72 Miss., 12 (s.c., 16 South. Rep., 248), in which case this court was particular in emphasizing the fact that the deceased was actually supporting his mother, who was plaintiff in the action. And the subject is somewhat touched upon in *Railroad Company* v. *Crudup,* 63 Miss., 219. Cooley on Torts on p. 320 states as follows: "A parent may recover for the death of a child who was of full age, and not residing with the parent, and upon whom the parent would have no legal claim to any assistance whatever. Here the *accustomed donation* of the child constitutes an element of damages." And to the same effect is the rule as stated in Segdwick on Measure of Damages, vol. 2, sec. 567, several authorities in support of the rule being cited. It will be found, however, that these authorities do not support the text if the author is to be understood as referring to suits by parents for the deaths of infant children. The author refers first to *Fordyce* v. *McCants,* 51 Ark., 509. The report shows that that was a suit to recover damages for the death of an adult.

The case of *Railroad Company* v. *Wheeler,* 35 Kan., 185,

went off on entirely different ground, the question there being whether a parent who had emancipated his son or relinquished his right to his services could recover more than nominal· damages. The court stated that the suit was not only for the father, but for the mother, who also had a right, and that parents could recover for the death of a child who had attained majority if there was proof that pecuniary damages resulted therefrom to the parents, such as the loss of support.

The case of *Monroe* v. *Railroad Company,* 84 Cal., 515, was a suit by an administrator and brought under a peculiar California statute providing for suits for the death of a person not a minor. The case of *Schefler* v. *Railroad Company,* 32 Minn., 212, was also under special state statute. The case of *Railroad Company* v. *Cowser,* 57 Tex., 293, was also a suit for the death of a child, an adult, who was contributing to the support of his parents, who brought the suit. Hence it is apparent that Mr. Sedgwick refers solely to the rule of children ministering to the support of parents, when he lays down the rule that a jury may take into account the reasonable expectation of pecuniary benefit from the continuance of life beyond minority, and that the general application of the rule pertinent to the case at bar, as stated by him, does not differ from other authorities.

We further call attention to the fact that, while Am. & Eng. Ency. Law, vol. 8, p. 20, seems to lay down the rule that a parent in suit for damages for death of a child is entitled to show a pecuniary interest in the life of the child beyond its maturity, and under . proof of a reasonable expectation of pecuniary benefit from the continuance of the child's life may recover a fair value of expectation, yet the authorities cited in support of such allegation are practically all cases where the suits were to recover for the deaths of adults contributing support. In fact, on page 21 of said authority, it is stated: "Damages after majority are only recoverable upon affirmative proof by plaintiff that he had a right to expect pecuniary advantage from the child after the latter's maturity." For a

clear statement of the true rule, we refer the court to the case of *Cooper* v. *Lake Shore Railroad Company,* 66 Mich., 261.

The eighth instruction granted to the appellee was fatally erroneous in that it assumed that the right to prospective gratuities had been established by proof. The language of the instruction is, "The loss of prospective gratuities to his mother after he became twenty-one years of age." An instruction in almost the same language was condemned by the court in the case of *Ry. Company* v. *Hyatt,* 12 Tex. (Civil Appeal), p. 435. In that case the trial court instructed the jury that it might include as an element of damages "such pecuniary benefits as the child might confer on its parents after majority." The court held the instruction to be erroneous, because it allowed the jury to find all such pecuniary benefit as the parent might possibly have received, not confining it to such as might *reasonably have been expected* under the circumstances. All of the authorities confine the recovery to such prospective contribution as might *reasonably* be expected under the circumstances. The reasonableness of the expectations is to be based upon evidence, taking into consideration the age, health, earning capacity, expectation of life, present contribution, the character of the contributions and their frequency. The jury cannot be turned loose, as in this case, to award damages for prospective gratuities unsupported by proof. So the instruction as drawn is fatally defective in not confining the jury to such sums or sum as the plaintiff might *reasonably expect.* The proof in this case shows that no voluntary contributions were being made by the deceased, although his mother, as was her right, took all of his wages, but certainly it could not be assumed that this would continue indefinitely.

But the instruction is erroneous in another point of view. There is no proof in the record, or any attempt at proof, of the expectancy of life of the mother. And this should have been shown. In the *Crudup case,* 63 Miss., *supra,* this court held

that it was error to admit the expectancy of life of the deceased and that it was error to exclude the expectancy of life of the parent. The rule is that she could recover only such an amount as from all the circumstances in evidence she could reasonably expect. Her expectation could not extend beyond her life; and what her expectancy of life was is nowhere shown. See Am. & Eng. Ency. Law, vol. 8, pp. 922 and 940.

It is entirely wrong to say that the amount of the damage could not be proven by evidence. It is true that a plaintiff is not required to show in dollars and cents what his damage was, that he suffered one hundred dollars of pain, or a thousand dollars of pain, but it is perfectly competent to show that he suffered great pain, or that he suffered no pain at all, and such evidence being introduced must be controlling with the jury in determining their verdict. In Am. & Eng. Ency. Law, vol. 8, we find the rule laid down as follows: "When such evidence is proper, proof of pain and suffering undergone by the deceased in consequence of the injury may be made by the testimony of eyewitnesses and physicians, or by showing the circumstances of the injury." It is perfectly competent to show that the deceased, although he survived the injury, was unconscious up to the time of his death. See authority above cited. Any competent evidence bearing upon the extent of the injury and the character of the suffering of the deceased is admissable and must be controlling with the jury. The matter is not left to the judgment of the jury without regard to evidence.

The instruction in the instant case is particularly vicious because the testimony was that the deceased suffered very little pain, and the jury were told that they can disregard this and give such damages as in their judgment they think fair and just.

Again, when we come to consider that portion of the instruction which relates to the amount of the mother's recovery in her right, the same vice occurred. The jury is not in any way

referred to the evidence; they are turned loose to award just such damages as they see fit to award, and they are nowhere told that they must have regard to the evidence in the case. They are told that they can award damages for the loss of prospective gratuities from the deceased to his mother, and there is not a scintilla of evidence that there was any reasonable expectation of gratuities, or would be, or likely to be. It is elementary that in awarding compensatory damages that the jury must be governed by the circumstances in the evidence, and they cannot be turned loose, as they were in this case, to award such damages as they may from their own judgment conclude· to award, irrespective of the evidence in the case.

Under the wording of the instruction are we to deem it amazing that the jury found a verdict for $13,000? For such errors in the instruction, the case must be reversed.

*F. B. Pratt,* for appellee.

The appellant objects to that part of the eighth instruction for appellee which refers to the prospective gratuities of the mother after her son should arrive at the age of twenty-one years, the objection being based on the ground that prospective gratuities cannot be considered under the statute, law and decisions of this state, citing *Railroad Company* v. *Watley,* 69 Miss., 145 (s.c., 13 South. Rep., 182), in aid of such objection. But the court there simply announced the general rule that loss of society, etc., is not an element of damage, and that compensation must be measured by the pecuniary interest of the parent in the child. The question of gratuities after majority was not raised nor considered. The last sentence of the opinion in that case is in these words: "It is a question of compensation for the loss the father has sustained for the death of the child, based upon the theory of his right to services during minority," has no binding, or even persuasive, force in this case. The rule as to the measure of damages, recognized by all the cases is the present value of

the reasonable expectations of the pecuniary advantage to those entitled to recover, which they have lost by the child's death. It is the amount of pecuniary assistance and support they might reasonably have expected to receive from the deceased had he lived.

Are expectations or gratuities from the deceased after majority any more a matter of chance and speculation than the probable earnings of the child until he arrives at majority? It is wholly a matter of speculation and doubt whether an infant, had he lived, would have remained at home and worked for his parents. If a boy of bad habits and disposition, he is likely to run away from his parents. If a boy of good habits and affectionate and dutiful disposition, it may reasonably be expected that he will devote his services to his parents during minority, and it is equally reasonable that he will assist them afterwards. The expectation of gratuities after majority is quite as reasonable in any case as expectation of receiving his wages.

In *Vicksburg* v. *McLain,* the sixth instruction recited that the damages recoverable were largely prospective, and this court in sustaining the instructions says that prospective advantages of a pecuniary nature are elements of damage.

The doctrine of prospective benefit as an element of damage was recognized in *White* v. *R. R. Co.,* 72 Miss., 12 (s.c., 16 South. Rep., 248). It is true that was the case where an adult was killed, but I have found no case, and opposing counsel have cited none, that limits prospective gratuities to cases of adults. A son twenty years old, the support of his indigent mother, earning large wages, which he cheerfully turns over to his mother, is killed; is there any reason why the mother's measure of recovery should be confined to his wages for the remaining months of his majority?

Opposing counsel say that the rule laid down by Sedgwick and in the Am. & Eng. Ency. of Law that "the jury may take

into consideration reasonable expectations of pecuniary benefit beyond minority" is not supported by the authorities cited, for the reason that most of the cases cited are of *adults*. But nothing in any of these cases indicates that the same rule would not apply to minors.

The instruction condemned by the court in *R. R. Co.* v. *Hyatt,* 12 Texas Civ. Ap., 435, cited by appellants, is not at all like the one in this case. In the Texas case the jury were instructed to allow all such pecuniary benefits as the child *might* confer. The court says the instruction allowed all such benefits as a parent might possibly have received.

*R. R. Co.* v. *Cowser,* 57 Tex., 293; *G. C. & S. R. R.* v. *Compton,* 75 Tex., 677; *C. & E. I. R. R.* v. *Beaver,* 199 Ill., 34, and *Draper* v. *Tucker* (Neb.), 95 N. W. Rep., 1026, all hold that compensation is not confined to expectancy during minority.

But grant for the sake of argument that the instruction would have been technically more correct if we had added to it the words, "which she might reasonably have expected," is it reasonable to suppose that the jury could have been misled by the instruction as given? Prospective gratuities, prospective benefits, prospective donations from any stated source, convey to the ordinary mind the idea of such gratuities of benefits or donations as a person has reason to expect to receive.

But counsel say that the gratuity clause of the instruction was erroneous because no proof was made upon which to base it; nor proof that contribution would be made after majority. From the very nature of such cases no other proof is possible than to prove the age, habits, disposition, etc., of the child. The testimony in the case was to the effect that the deceased son was a bright, sprightly child, dutiful, obedient and affectionate to his mother, and had for four years worked cheerfully and continuously for the purpose of assisting in the support of the family. From such a boy may we not reasonably expect

assistance for his parents after majority? What further or stronger proof could be made.

In *Crudup's case,* 63 Miss., 291, the doctrine is recognized that expectant gratuities may be considered by the jury; and the court there lays down the rule by which the jury may judge whether or not any grautities may be expected: "The field of investigation on this point is uncertain and hypothetical," says the court, "in a great measure a matter of conjecture."

It is contended by opposing counsel that as no testimony was introduced as to the probable length of life of the mother, in the absence of such evidence the instruction as to expectant gratuities was wrong. But such contention must be held erroneous. 4 Sutherland on Damages, 3741; 13 Cyc., 361.

Opposing counsel contend that the eighth instruction is incorrect because, they say, it does not refer to the evidence; that as written it leaves the jury to find such an amount as they may see fit, regardless of the testimony. But it must be noted that this instruction was the last one given for the plaintiff; it must be construed with the preceding instructions, and these remedy the alleged departure from the correct. In them the jury were expressly instructed to consider the testimony throughout in returning their verdict. Taking all of the instructions together there could be nothing to mislead the jury. *Vicksburg* v. *McLain,* 67 Miss., 6.

The eighth instruction is further objected to on account of the clause: "You will fix the amount of compensatory damages at such sum as in your judgment is fair and just, and as would be reasonable compensation to Edward for his injuries."

This is not such an instruction as was condemned in *R. R.* v. *Smith,* 82 Miss., 656 (s.c., 35 South. Rep., 168). In that case the instruction told the jury to find such damages as *"they shall see fit."* In the case at bar they were told they should find *compensatory damages only,* and in such sum as in their judgment is *fair and just* and such as would be *reasonable compensation,* etc.

Again, in the *Smith case,* the jury were expressly restricted to instructions given for the plaintiff. No such vice appears in the instructions we are now considering.

Again, the eighth instruction did not say, as assumed by appellants in their brief, that the damages could not be proved by evidence; but that the amount of same could be testified to by any witness.

The instruction was simply a statement of the rule laid down in *Bell* v. *R. R. Co.,* 76 Miss., 71 (s.c., 23 South. Rep., 268). Says WOOD, C. J.: "It is often, if not generally ,impossible to prove in dollars and cents the sum to be awarded" *i. e.* as we say in the instruction, the amount cannot be proven by evidence.

Argued orally by *Robert Powell,* for appellant, and *F. B. Pratt,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The eighth instruction given for the plaintiff was as follows: "If under the foregoing instructions the jury should find for the plaintiff, they will, in computing the amount of the damages, assess as compensatory damages such damages as the boy, Edward, sustained up to the time of his death, taking into consideration injuries which he received, and the mental and physical suffering which he endured. You will fix the amount of such compensatory damages at such sum as in your judgment is fair and just, and as would be reasonable compensation to said Edward for his injuries. The amount of such damages cannot be proved by evidence, but the amount of same is largely in your discretion, governed by a sense of justice and right. In addition to the damages you may assess as having occurred to said Edward in his lifetime, you will assess the pecuniary damages that the plaintiff may have sustained by the death of said Edward. And in fixing upon the amount of such pecuniary damages; you will take into consideration the

loss to the mother of the services of Edward until he would have arrived at the age of twenty-one years, and the loss of prospective gratuities from Edward to his mother after he became twenty-one years of age."

The last clause of this instruction was, under the facts of this case, manifest error. The instruction does not even say that the plaintiff should recover prospective gratuities which she had a reasonable expectation of receiving from her son, Edward, after he became twenty-one years of age. It is not all possible gratuities which can be recovered in a case, even where gratuities are properly recoverable, but only such gratuities as there is a reasonable expectation of receiving; and the reasonableness of the expectation of receiving gratuities in the future must be based on evidence that gratuities have been received in the past. Further than this, it is also true that in a suit of this sort by the mother, the extent of recovery, before majority of the child killed, is the value of the services of the child from the time of death up to majority, plus such damages as the jury may fairly award as compensation for the physical and mental anguish endured by the child killed between the injury and death, to which must also be added any such gratuities as the evidence may show the mother had a reasonable expectation of receiving before or after majority, and also whatever sum the son might have recovered as the present value of his own expectancy. These four elements of damage are all proper.

The case of *Railroad Co.* v. *Watley,* 69 Miss., 145 (s.c., 13 South. Rep., 182), laid down the rule that, in an action by the parent for the negligent killing of his child, the measure of his damages was "compensation limited to the actual pecuniary loss sustained, on the theory of the parent's right to the services of the child during minority." But to this we think should now be added, under Laws of 1898, ch. 65, p. 82, the other three elements of damage named. This act changed the rule announced in *Railroad Co.* v. *Pendergrass,* 69 Miss., 425

(s.c., 12 South. Rep., 954), that there could be no recovery at all when death had been instantaneous, and then, in fixing the amount of damages, uses this language: "The party suing shall recover such damages as the jury shall assess, taking into consideration all damages of every kind to any and all parties." Code 1892, § 663, reads: "The jury may give such damages as may be fair and just with reference to the injury of the parties suing." The change is very marked, and we think the legislature intended, and by this act meant to authorize, a recovery, in a suit of this character, not only of the value of the services of the infant until majority, but such damages as the jury might reasonably award for the physical and mental suffering endured by a decedent between the injury and death, however short that time may be, and damages for the other two elements named above. And in view of this construction of the statute we are not prepared to say that the verdict in this case was excessive, without regard to the question whether punitive damages may be allowed or not in a suit of this character, under Laws 1898, ch. 65, p. 82. That question need not necessarily be decided in this case. But in view of the fact that there is no proof here of the age of the mother, no proof by mortuary tables or otherwise of her life expectancy, no proof of her habits of life, or any other circumstances from which the jury might judge what her life expectancy might be, and in view of the failure of plaintiff in his instruction No. 8 to use the words "such gratuities as the plaintiff might reasonably have expected under the evidence she would receive," it is clear that that clause of the instruction is fatally erroneous. The jury were told by this instruction that they might allow any possible gratuities, not such gratuities as the mother, from evidence that she had received gratuities in the past, might reasonably have expected to receive in the future; and, again, there is no proof of any gratuity received in the past; and, again, whatever the mother would get from the child by way of services was what was hers by law, and not a gratuity. An

infant with a fortune of its own, who has been giving its parent from that fortune gratuities, may reasonably be expected to continue this in the future to a parent, rich or poor. In a case like this, therefore, where the proof shows nothing except that the minor received but $10 a month, and that there were only seven years between the date of the injury and his majority, and that there had never been any gratuity given by him to his mother, and in which the court below gave an instruction that no punitive damages should be allowed, the only elements of damage which the jury could legally have taken into consideration were the value of the services of the minor to majority and such damages as they might award as reasonable compensation for the physical and mental suffering endured by the minor between the injury and his death, by damages for the other elements named. These four elements, however, are enough to support this verdict so far as the amount is concerned, since it is for the jury, and not for the court, to fix the amount of damages to be awarded as compensation for mental and physical suffering. The court in a proper case might cut down such amount, but we are not prepared to say in this case that the amount exceeds what would be proper for the four elements of damages stated.

In view of the fact that the court below charged the jury that they should not award punitive damages, we must accept the verdict as having excluded them. Aside from the errors indicated, we think this record free from errors, and but for them would unhesitatingly affirm the judgment.

*Reversed and remanded.*